UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MONÉ MAKKAWI, et al.,

                    Plaintiffs,

          - against -                       25-CV-6321 (DEH)

CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT OR, ALTERNATIVELY, TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO THE SECOND CIRCUIT'S FIRST-FILED RULE**

**MURIEL GOODE-TRUFANT**

CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    Sandra A. Bober
        *Senior Counsel*
        Special Federal Litigation Division
        (212) 356-0827

        Joanne M. McLaren
        *Senior Counsel*
        Special Federal Litigation Division
        (212) 356-02143

Dated: December 1, 2025

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 9

    I.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED OR, ALTERNATIVELY, TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO THE SECOND CIRCUIT'S FIRST-FILED RULE. ..... 9

        A.    The First-Filed Rule Applies to This Action. ...............................................9

        B.    There are No "Special Circumstances" that Warrant Giving Priority to This Action over the *Steadman* Action...........................................................................................................15

        C.    The "Balance of Convenience" Does Not Favor This Action...........................................................................................................16

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) ................................................................ 10

*Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 449 (E.D.N.Y. 2011) ...................... 16

*Andreas-Moses v. Hartford Fire Ins. Co.*, No. 16-CV-1387, 2017 U.S. Dist. LEXIS 180420 (N.D.N.Y. Oct. 30, 2017)........................................................................... 17

*Burke v. Bimbo Bakeries USA, Inc.*, No. 19-cv-902, 2019 U.S. Dist. LEXIS 198263 (N.D.N.Y. Nov. 15, 2019) ................................................................................................................... 19

*Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013)........................... 19

*Chamber of Commerce of U.S. v. James*, No. 25-cv-01738, 2025 U.S. Dist. LEXIS 175013 (S.D.N.Y. Sep. 8, 2025) ................................................................................... 11

*Cuebiq Grp., LLC v. PaeDae, Inc.*, No. 24-CV-7542 (JGLC), 2025 U.S. Dist. LEXIS 162677 (S.D.N.Y. Aug. 21, 2025) ................................................................................... 11

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000)............................................. 10, 19

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)......................................... 9

*Doe v. Rees*, No. 24-cv-00274 (MAD/ML), 2025 U.S. Dist. LEXIS 35215 (N.D.N.Y. Feb. 27, 2025) .................................................................................................................... 10

*Emps. Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271 (2d Cir. 2008) .................... 1, 9, 15

*Fandino v. Amalgam Entm't, LLC*, No. 09-CV-8325, 2010 U.S. Dist. LEXIS 14684 (S.D.N.Y. Feb. 19, 2010) ................................................................................................................... 18

*Global Network Communs., Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ..................... 2

*Goldberger v. Bear, Stearns & Co.*, 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000)........................................................................... 19

*Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701 (RPK) (RER), 2022 U.S. Dist. LEXIS 127170 (E.D.N.Y. July 16, 2022) ........................................................................ 12

*Jeffrey v. DTG Operations, Inc.*, No. 19-CV-7209, 2020 U.S. Dist. LEXIS 56265 (E.D.N.Y. Mar. 31, 2020)........................................................................................... 14, 19

*Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 357 (D. Conn. 2019)................................. 19

*Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017) ................................................................................................................ 11, 19

*Marsh & McLennan Agency LLC v. Alliant Ins. Servs.*, No. 25-CV-6936 (RA), 2025 U.S. Dist. LEXIS 183941 (S.D.N.Y. Sep. 18, 2025)................................................................. 11

*McKinney v. Stanley*, No. 24-CV-8860 (VEC), 2025 U.S. Dist. LEXIS 142967 (S.D.N.Y. July 25, 2025) .............................................................................................................. 14, 17

*Motley v. Her Imps.*, No. 18-CV-00517 EAW, 2019 U.S. Dist. LEXIS 238367 (W.D.N.Y. Jan. 22, 2019) .............................................................................................................. 11

*New Phone Co. v. City of New York*, 498 F.3d 127 (2d Cir. 2007) ............................................. 11

*Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751 (PAE), 2012 U.S. Dist. LEXIS 33875 (S.D.N.Y. Mar. 13, 2012) ................................................................. 9, 10, 15, 16

*Pippins v. KPMG LLP*, No. 11-CV-377, 2011 U.S. Dist. LEXIS 30678 (S.D.N.Y. Mar. 21, 2011) ................................................................................................................. 11, 13

*Rights To Be v. Bondi*, No. 25-cv-3676 (KAM) (CLP), 2025 U.S. Dist. LEXIS 181427 (E.D.N.Y. Sep. 16, 2025) ................................................................................................................. 14

*Santana v. Cavalry Portfolio Servs., LLC*, 2019 U.S. Dist. LEXIS 201469 (S.D.N.Y. Nov. 19, 2019) .............................................................................................................. 10, 11

ii

*Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 (VEC), 2015 U.S. Dist. LEXIS 14574 (S.D.N.Y. Feb. 5, 2015) ........................................................................................... 10, 14, 15, 18

*Top Office Pros Bus. Servs. v. JPMorgan Chase Bank N.A.*, No. 25-CV-2544 (GHW) (HJR), 2025 U.S. Dist. LEXIS 192335 (S.D.N.Y. Sep. 29, 2025)................................. 10, 14

*U.S. SEC v. Alpine Secs.. Corp.*, 768 F. App'x 93 (2d Cir. 2019)................................................. 9

*United States v. New York*, No. 25-cv-3656 (PKC), 2025 U.S. Dist. LEXIS 149744 (S.D.N.Y. Aug. 4, 2025) ................................................................................................. 14

*Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 549 (E.D.N.Y. 2012) .................................... 17

*Walsh v. Nelnet Servicing, LLC*, No. 24 Civ. 4325 (DEH), 2025 U.S. Dist. LEXIS 137297 (S.D.N.Y. July 18, 2025) ............................................................................ passim

*Williams v. City of New York*, No. 03 Civ 5342, 2006 U.S. Dist. LEXIS 6470 (S.D.N.Y. Feb. 21, 2006) ......................................................................................................... 16

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235 (E.D.N.Y. 2012) 11, 13, 14, 18

*Zainfeld*, 2024 U.S. Dist. LEXIS 91179 (S.D.N.Y. May 20, 2024) ................................ 16, 17, 18

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................ 16

42 U.S.C. § 1983 ....................................................................................................................... 5

## PRELIMINARY STATEMENT

This is a putative class action in which the plaintiffs purport to represent a class of protestors who were allegedly subjected to unconstitutional procedures and policies at several pro-Palestine protests, including six in Brooklyn. It is virtually identical to (i.e., copy-and-pasted from) a putative class action filed on behalf of pro-Palestine protestors just days earlier—by the same lawyers—in the Eastern District of New York: *Steadman v. City of New York*, No. 25-cv-4081 (E.D.N.Y.) (filed July 24, 2025). The plaintiffs in *Steadman*, in addition to being represented by the same lawyers as here, challenge the *same* policies, assert the *same* causes of action, and seek the *same* injunctive relief in the form of, among other things, various changes to NYPD policies and procedures that would apply to *all* protests. But for reasons that are not entirely clear, the current complaint carves out the *Steadman* plaintiffs from its class definition.

Allowing two putative class actions to proceed simultaneously in two districts, when they challenge the same policies and seek the same generally applicable relief, burdens the courts with duplicative litigation, and creates a risk of inconsistent judgments. Thankfully, the courts have fashioned a remedy to prevent such insufficiency and inconsistency: the "first-filed rule," which provides that, "[a]s a general rule, where there are two competing lawsuits, the first suit should have priority." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (internal quotation marks omitted). Under the rule, courts are empowered with discretionary authority to dismiss, stay, or transfer duplicative actions to manage their dockets, conserve judicial resources, and avoid inconsistent judgments.

The Court should apply the first-filed rule here and dismiss (or, in the alternative, transfer) this case. The similarity between the plaintiffs, the factual allegations, the claims, the legal theories, the lawyers, the discovery and evidence that will be required, and the relief sought counsel against allowing these actions to proceed on two different tracks in two districts. And Your Honor

has recently recognized that transfer is appropriate when putative class actions are filed close in time by the same lawyers and allege violation of the same statutes, under the same legal theories, and seek identical relief. *Walsh v. Nelnet Servicing, LLC*, No. 24 Civ. 4325, at *8 (DEH), 2025 U.S. Dist. LEXIS 137297 (S.D.N.Y. July 18, 2025) (transferring case and noting that the first-filed action, filed by the same lawyers, "could easily have been framed to include both classes").

In short, the City may win this case or it may lose this case, but there is no reason it should be required to litigate it twice and potentially be subject to inconsistent judgments. If the plaintiffs or their lawyers wish to pursue class claims on behalf of pro-Palestine plaintiffs in addition to the *Steadman* plaintiffs, they can and should be required to amend their complaint in that first-filed action and proceed in a single forum.

## BACKGROUND

This case and the related *Steadman* case in the Eastern District of New York were filed within a week of each other and are being litigated by the same group of law firms on behalf of overlapping classes. On July 24, 2025, The Aboushi Law Firm and another firm filed *Steadman* (No. 25-4081) in the Eastern District, and five days later a consortium of firms—including The Aboushi Firm, Cohen & Green, Massimi Law, and Beldock Levine & Hoffman—filed an amended class action complaint. *See Steadman*, 25-4081 (E.D.N.Y.) DE[1] 1 (complaint), DE 9 (first amended class action complaint ("*Steadman* Compl."), attached to the Declaration of Sandra A. Bober ("Bober Decl.") as Exhibit A).[2] Two days later, on July 31, Cohen & Green and another firm

---

[1] References to "DE" are to the docket entries of the respective cases.

[2] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (cleaned up).

initiated this case (DE 1–2, 8), and, eleven days after that (August 11), a similar consortium of firms—including again The Aboushi Firm, Cohen & Green, Massimi Law, and Beldock Levine & Hoffman—filed a first amended class action complaint in this case. DE 9 at 96 ("*Makkawi* Compl.").

*Steadman* is a putative class action brought against the City and members of the NYPD on behalf of pro-Palestine protesters at the Harlem campus of the City College of New York on April 30, 2024. *Steadman* Compl. ¶¶ 25–37. This case is a putative class action brought against the City and NYPD on behalf of pro-Palestine protesters from October 21, 2023 "and ongoing" (*Makkawi* Compl. ¶ 25), including a protest in Harlem (on August 14, 2024) and a protest at CUNY's Brooklyn College (on May 8, 2025). This case also encompasses protests in Bay Ridge, Brooklyn (on October 21, 2023, and May 18, 2024); Prospect Heights, Brooklyn (on May 11, 2024); Borough Park, Brooklyn (on February 18, 2025); Crown Heights, Brooklyn (April 24, 2025); and Ocean Parkway, Brooklyn (April 28, 2025). *Makkawi* Compl. ¶¶ 65–130. The complaint explicitly carves out, among others, anyone employed by counsel for the defendants, any judge to whom this case is assigned and their families and staff, and "[m]embers of the proposed Class in [*Steadman*]." *Makkawi* Compl. ¶ 483.

Using nearly identical language, both complaints purport to seek "justice for and accountability around" the City and the NYPD's alleged "retaliatory, disproportionate, and unreasonable" responses related to pro-Palestine protests and the purported class members' First Amendment activities. *Steadman* Compl. ¶ 1; *Makkawi* Compl. ¶ 25. Both complaints describe the NYPD's alleged (1) "violent response" to pro-Palestine protests and "permissive response" to other demonstrations (*Steadman* Compl. ¶¶ 103–11; *Makkawi* Compl. ¶¶ 139–47); (2) "history of mishandling certain protests" (*Steadman* Compl. ¶¶ 134–42; *Makkawi* Compl. ¶¶ 148–56); (3)

"failure to train regarding protest policing" (*Steadman* Compl. ¶¶ 143–77; *Makkawi* Compl. ¶¶ 178–204); (4) "policy and/or practice of using excessive force to control the speech of protestors" (*Steadman* Compl. ¶¶ 178–85; *Makkawi* Compl. ¶¶ 157–77); and (5) "violent response to policing protests in 2020" (*Steadman* Compl. ¶¶ 203–16; *Makkawi* Compl. ¶¶ 165–77).

Again using largely copy-and-pasted language, the complaints include identical class allegations, including that (1) the City's "policies, practices, and customs effectuated at the [subject protests] were a result of a unitary scheme in which the Defendants violated the constitutional rights of Class Members" (*Steadman* Compl. ¶ 221; *Makkawi* Compl. ¶ 487); (2) the "Class Representatives and all Class Members were and will be victimized by these same retaliatory policies of arresting protestors without legal justification" (*Steadman* Compl. ¶ 221; *Makkawi* Compl. ¶ 487); (3) the asserted claims (which, as explained below, are identical in both cases) "are also typical of the legal claims possessed by the other class members, in that at the time the Class Representatives' constitutional rights were violated, they were engaging in and/or attempting to engage in activities protected by the First Amendment or were simply observing and/or recording or in the vicinity of such conduct as bystanders" (*Steadman* Compl. ¶ 224; *Makkawi* Compl. ¶ 490); (4) the class representatives were the victims of Defendants' policies of not making individualized determinations of probable cause before arresting groups of individuals engaged in or observing lawful protests (*Steadman* Compl. ¶ 224; *Makkawi* Compl. ¶ 490); (5) the Class Representatives "were the victims of excessive and unreasonable force in the course of these unconstitutional arrests and, following their arrests, were detained under conditions that were unreasonable, inhumane, excessive and punitive" (*Steadman* Compl. ¶ 224; *Makkawi* Compl. ¶ 490); and (6) "many Class Representatives and Class Members will continue to regularly participate in Palestine Protests, where the Defendants' unconstitutional policies, practices and/or

customs are implemented, and therefore remain at high risk of being unconstitutionally harmed in the future pursuant to these policies, practices and customs as they wish to participate in future protests" (*Steadman* Compl. ¶ 227; *Makkawi* Compl. ¶ 493).

Further, the complaints allege in nearly identical language that the class representatives for both cases are adequate to serve in those roles because (1) they were arrested "without legal justification, while attending or observing" pro-Palestine protests (*Steadman* Compl. ¶ 228; *Makkawi* Compl. ¶ 494); (2) they "had their summonses or other charging instruments later dismissed" (*Steadman* Compl. ¶ 228; *Makkawi* Compl. ¶ 495); (3) "they were subjected to Defendants' Protest Arrest Processing Policies" (*Steadman* Compl. ¶ 228; *Makkawi* Compl. ¶ 495); and (4) at the pro-Palestine protests, they were subjected to violations of their First Amendment rights, excessive force, and unconstitutional conditions of confinement (*Steadman* Compl. ¶ 228; *Makkawi* Compl. ¶ 497).

The claims for relief are identical, including claims pursuant to 42 U.S.C. § 1983 for (1) unlawful seizure and false arrest (*Steadman* Compl. ¶¶ 238–243 & 290–295; *Makkawi* Compl. ¶¶ 509–514); (2) excessive force (*Steadman* Compl. ¶¶ 244–47; *Makkawi* Compl. ¶¶ 515–18); (3) violation of First Amendment rights (*Steadman* Compl. ¶¶ 248–52; *Makkawi* Compl. ¶¶ 519–24); (4) First Amendment retaliation (*Steadman* Compl. ¶¶ 253–63; *Makkawi* Compl. ¶¶ 525–38); (5) due process violations (*Steadman* Compl. ¶¶ 264–68; *Makkawi* Compl. ¶¶ 539–43); (6) deprivation of fair trial rights (*Steadman* Compl. ¶¶ 268–72; *Makkawi* Compl. ¶¶ 544–47); (7) malicious prosecution (*Steadman* Compl. ¶¶ 273–80; *Makkawi* Compl. ¶¶ 548–55); (8) violation of equal

protection rights and selective enforcement (*Steadman* Compl. ¶¶ 281–84; *Makkawi* Compl. ¶¶ 556–59); and (9) *Monell* liability (*Steadman* Compl. ¶¶ 285–89[3]; *Makkawi* Compl. ¶¶ 560–65).

The complaints also assert the following identical state law claims against the City and individual NYPD members: (1) "Qualified Immunity Repeal" claims (*Steadman* Compl. ¶¶ 296–304; *Makkawi* Compl. ¶¶ 618–26); (2) violations of the New York state constitution (*Steadman* Compl. ¶¶ 305–10; *Makkawi* Compl. ¶¶ 566–71); (3) assault (*Steadman* Compl. ¶¶ 311–16; *Makkawi* Compl. ¶¶ 572–77); (4) battery (*Steadman* Compl. ¶¶ 317–22; *Makkawi* Compl. ¶¶ 578–83); (5) conversion (*Steadman* Compl. ¶¶ 323–27; *Makkawi* Compl. ¶¶ 584–88); (6) false arrest, false imprisonment, and unreasonable detention (*Steadman* Compl. ¶¶ 328–32; *Makkawi* Compl. ¶¶ 589–93); (7) negligent training and supervision (*Steadman* Compl. ¶¶ 333–39; *Makkawi* Compl. ¶¶ 594–600); (8) excessive detention (*Steadman* Compl. ¶¶ 340–44; *Makkawi* Compl. ¶¶ 601–05); and (9) violations of the right to record (*Steadman* Compl. ¶¶ 345–356; *Makkawi* Compl. ¶¶ 606–17).

Both actions also seek certification of an injunctive class and a damages class, which, they argue, is proper because "the Defendants have acted on grounds generally applicable to the class, in engaging in the aforementioned practices and failing to correct the aforementioned unconstitutional policies thereby making class-wide declaratory and injunctive relief appropriate." *Steadman* Compl. ¶ 237; *Makkawi* Compl. ¶ 507. And both complaints include identical language

---

[3] Paragraph 286 of the *Steadman* complaint appears to contain a typographical error, as it describes allegations relating to "Black Lives Matter and/or anti-police brutality protests." We presume counsel for the *Steadman* plaintiffs intended to include the same language used in paragraph 561 of the *Makkawi* complaint—that is, "Palestine-related protests"—but neglected to make this change when adopting their form complaint from the cases consolidated in *In Re: New York City Policing During Summer 2020 Demonstrations* for use in their Palestine-related protest cases.

regarding a damages class, including that "[a] class-wide proceeding will generate common answers to these questions." *Steadman* Compl. ¶ 236; *Makkawi* Compl. ¶ 508.

On September 23, 2025, the City requested a pre-motion conference before Judge Reyes regarding their anticipated motion to transfer *Steadman* to this district. *Steadman*, 25-4081, DE 17, attached to the Bober Decl. at Exhibit B. Defendants argued that the balance of convenience and justice favored transfer to this district because, *inter alia*, "Plaintiffs' counsel acknowledges that the Southern District of New York is an appropriate venue, and convenient for putative class members, by virtue of the fact that that is where they brought the *Makkawi* putative class action, which would have encompassed the *Steadman* Plaintiffs had the *Makkawi* consortium not selectively excised the singular protest of April 30, 2024, from their putative class." *Id.* at 3.

*Steadman* plaintiffs' counsel opposed, arguing that virtually every factor—including convenience, location of documents, availability of process, relative means, forum familiarity, and trial efficiency—was neutral and thus favored maintaining *Steadman* in the Eastern District. *Steadman*, 25-4081, DE 20, attached to the Bober Decl. as Exhibit C. Counsel addressed those factors as follows:

> **Convenience (Factors 1 and 2).** As far as the first and second factors (convenience for witnesses and parties), there is not much difference in convenience between the federal court in Manhattan and the federal court in Brooklyn. The Southern and Eastern District courthouses are located less than three miles from each other, which virtually eliminates any inconvenience faced by parties in maintaining an action in the Southern District rather than the Eastern District of New York. Therefore, the Court's transfer determination will turn on an analysis of the nine convenience factors and any other factors particular to this case.
>
> Indeed, Defendants fail to specify any inconvenience and do not allege to suffer any burden by remaining in the Eastern District even if the operative facts occurred within the jurisdiction of the Southern District. The fact that the Eastern and Southern District courthouses are a mere two miles apart has prompted judges in this District and the Eastern District to weigh this factor neutrally.

**Location of Documents (Factor 3).** Because relevant documents would most likely be maintained electronically, including Body Worn Camera Video and Documents maintained by the NYPD and the City of New York, Defendants can easily access said sources of proof rendering this factor neutral. In the digital age where documents can be transferred relatively simply, the situs of documents is largely irrelevant. And even if this were not the case, at least one Defendant and other relevant officers appear to be stationed within the Eastern District, so records about those parties would likely be in the Eastern District.

**Locus of Operative Facts (Factor 4).** Defendants are correct the protest at issue took place within the Eastern District,[4] which means this factor weighs in favor of transfer.

**Availability of Process, Relative Means, Forum Familiarity, and Trial Efficiency (Factors 5, 6, 7, and 9).** Plaintiffs and all of the identified defendants work or reside within 100 miles of both the Southern and Eastern Districts and neither party identified any other witnesses, so because subpoena power does not meaningfully differ between the two forums, process weighs neutrally. So too for relative means of the parties and the Court's familiarity with the law. Likewise, trial efficiency would be the same in both forums.

**Plaintiff's Choice of Forum (Factor 8).** As alluded to above, motions to transfer should be evaluated from a strong baseline in favor of the plaintiff's choice of forum. Whatever forum a plaintiff choses is a decision that is given great weight. And that is true even if the locus of operative facts is across the river: Plaintiffs do reside in the Eastern District of New York and therefore the Court should accord weight to Plaintiff's choice of forum, and this factor weighs against transfer.

*Steadman*, 25-4081, DE 20 at 2–3 (quotations, citations, alterations, and footnotes omitted).

Counsel concluded their letter with the following:

That leaves one factor in favor of transfer and one factor against, with the rest neutral. Defendants must make a clear and convincing showing that transfer is proper to prevail, and although the locus of operative facts is in the Southern District, this factor alone is insufficient to warrant a transfer of this case. The motion should be denied.

*Steadman*, 25-4081, DE 20 at 3 (quotations, citations, and alterations omitted).

---

[4] Counsel appears to mean "Southern District" here, not "Eastern District," as the subject protest occurred in Harlem. *See Steadman*, 25-4081, DE 20 at 3 (acknowledging that "the locus of operative facts is in the [Southern] District") (alteration in original).

At a conference on November 4, 2025, Judge Reyes deemed the *Steadman* defendants' motion to transfer venue "as made on the letters" and denied it. *Id.*, DE 21.

In light of this ruling honoring the *Steadman* plaintiffs' choice of forum and allowing the matter to proceed in the Eastern District, the City now moves to dismiss this case or, alternatively, to transfer it to the Eastern District, pursuant to the Second Circuit's well established first-filed doctrine.

## ARGUMENT

**I.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED OR, ALTERNATIVELY, TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO THE SECOND CIRCUIT'S FIRST-FILED RULE.**

### A.    The First-Filed Rule Applies to This Action.

"Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, 'the first suit should have priority,' and the later-filed suit should be dismissed." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751 (PAE), 2012 U.S. Dist. LEXIS[5] 33875, at *7 (S.D.N.Y. Mar. 13, 2012) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)); *see also U.S. SEC v. Alpine Secs.. Corp.*, 768 F. App'x 93, 94 (2d Cir. 2019) ("With limited exceptions, the first-filed rule instructs that the first suit takes priority.")[6]

"In the alternative, courts may opt to transfer a case to the first-filed district or stay the second case

---

[5] We are aware that Your Honor's individual practices request us to cite Westlaw whenever possible. The City Law Department provides attorneys with only LexisNexis accounts, and we apologize to the Court for the inconvenience.

[6] *See also Emps. Ins. of Wausau*, 522 F.3d at 274 ("As a general rule, where there are two competing lawsuits, the first suit should have priority.") (cleaned up); *Walsh*, 2025 U.S. Dist. LEXIS 137297, at *6 ("The First-to-File rule is a well-settled presumption favoring the forum wherein the suits are first filed.") (cleaned up).

pending resolution of the first-filed case." *Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 (VEC), 2015 U.S. Dist. LEXIS 14574, at *6 (S.D.N.Y. Feb. 5, 2015).

"The rule operates based on the date of the suits' filing, not on the date of service." *Santana v. Cavalry Portfolio Servs., LLC*, 2019 U.S. Dist. LEXIS 201469, at *7 (S.D.N.Y. Nov. 19, 2019). Here, *Steadman* was filed in the Eastern District on July 24, 2025 (*Steadman*, 25-4081, DE 1), seven days before this case was filed on July 31, 2025. DE 1–2. Accordingly, *Steadman* is the first-filed action.

"The doctrine serves to avoid duplication of judicial effort, to avoid vexatious litigation in multiple forums, to achieve comprehensive disposition of litigation among parties over related issues, and to eliminate the risk of inconsistent judgments." *Santana*, 2019 U.S. Dist. LEXIS 201469, at *6 (cleaned up).[7] Absolute uniformity of parties or legal issues is not required; rather, "[t]he issues . . . do not need to be identical, nor do the named parties need to be entirely the same so long as they represent the same interests." *Top Office Pros Bus. Servs. v. JPMorgan Chase Bank N.A.*, No. 25-CV-2544 (GHW) (HJR), 2025 U.S. Dist. LEXIS 192335, at *6 (S.D.N.Y. Sep. 29, 2025). "Two actions involve similar issues when there are sufficient overlapping factual and legal issues that would be supported by the same evidence." *Cuebiq Grp., LLC v. PaeDae, Inc.*, No. 24-

---

[7] *See also Top Office*, 2025 U.S. Dist. LEXIS 192335, at *6 ("The rule exists to foster judicial economy by avoiding duplicative litigation, and to protect parties from having to litigate the same issue in multiple venues."); *Doe v. Rees*, No. 24-cv-00274 (MAD/ML), 2025 U.S. Dist. LEXIS 35215, at *7 (N.D.N.Y. Feb. 27, 2025) ("Courts utilize the prior pending action doctrine to dismiss subsequent suits because 'plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'") (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)); *Oleg Cassini*, 2012 U.S. Dist. LEXIS 33875, at *9 (because parties "'should be free from the vexation of concurrent litigation over the same subject matter,' there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit.") (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)).

CV-7542 (JGLC), 2025 U.S. Dist. LEXIS 162677, at *11–12 (S.D.N.Y. Aug. 21, 2025) (cleaned up).[8]

The first-filed rule is regularly applied to putative class actions. *See Motley v. Her Imps.*, No. 18-CV-00517 EAW, 2019 U.S. Dist. LEXIS 238367, at *6 (W.D.N.Y. Jan. 22, 2019) ("[C]ontrary to Plaintiff's contention that the first-to-file rule does not apply to putative class actions, courts in this Circuit have regularly applied the first-to-file rule in such cases."); *Santana*, 2019 U.S. Dist. LEXIS 201469, at *10 ("That a first-filed class action has not yet reached the class certification stage does not prevent application of the first-filed rule."); *Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2017 U.S. Dist. LEXIS 165568, at *170 (E.D.N.Y. Oct. 4, 2017) ("[T]his Court has already applied the first-filed rule and dismissed two putative class actions that overlap with the claims for which Plaintiffs seek class certification here."); *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 247–48 (E.D.N.Y. 2012) (applying first-to-file rule to putative class and collective action); *Sana Zara Bukhari v. Deloitte & Touche LLP*, No. 12-CV-4290, 2012 U.S. Dist. LEXIS 167315, at *9 (S.D.N.Y. Nov. 26, 2012) (rule may be invoked in cases involving

---

[8] *See also New Phone Co. v. City of New York*, 498 F.3d 127, 130 (2d Cir. 2007) (courts "need not conduct a line by line comparison of [the cases]," but must be satisfied that both actions are based on a "'common nucleus of operative facts'" before dismissing the second-filed action); *Marsh & McLennan Agency LLC v. Alliant Ins. Servs.*, No. 25-CV-6936 (RA), 2025 U.S. Dist. LEXIS 183941, at *6 (S.D.N.Y. Sep. 18, 2025) (for application of the rule, the parties and claims in the competing suits need not be identical; rather, there need only be substantially similar parties and claims); *Chamber of Commerce of U.S. v. James*, No. 25-cv-01738, 2025 U.S. Dist. LEXIS 175013, at *11–12 (S.D.N.Y. Sep. 8, 2025) ("Plaintiffs argue that this case is not related to [the first-filed action,] claiming the parties are different, the claims are different, and the requested relief is different. To be related, however, cases need not be identical but substantially similar, and courts in this district often grant transfer on relatedness grounds while acknowledging differences between cases.") (cleaned up); *Santana*, 2019 U.S. Dist. LEXIS 201469, at *6–7 ("In determining whether to apply the first-filed doctrine, courts consider whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts."); *Pippins*, 2011 U.S. Dist. LEXIS 30678, at *5 ("The rule does not require that the claims present the exact issue, only that the cases be related.").

-11-

"parallel class actions filed against the same defendant[s] and involving claims based, at least in substantial part, on the same law") (collecting cases).[9]

Your Honor recently transferred a second-filed putative class action to the District of New Jersey pursuant to the first-filed rule under circumstances similar to those presented here. *See Walsh*, 2025 U.S. Dist. LEXIS 137297. In *Walsh*, plaintiff's counsel filed a putative class action in this district two days after filing a near identical putative class action in the District of New Jersey. The cases contained overlapping allegations of wrongdoing by the same defendant and alleged violations of the same federal statute pursuant to the same theory of liability. Like here, "[t]he actions differ[ed] based on their proposed class populations," but Your Honor nonetheless determined that the first-filed rule applied, writing:

> Clearly, this case and the *Derrico* action are "substantially similar." Both bring a single claim against the same defendant, Nelnet, under the same statute, the FCRA, under what is, broadly speaking, the same theory: Nelnet's alleged failure to correct the inaccurate student loan information it furnished to CRAs. Both cases were filed by the same attorney. And the complaints are nearly identical. True, the putative classes in the actions differ—with the *Derrico* action brought on behalf of borrowers whose loans have been forgiven altogether, and this action brought on behalf of those whose loans were merely transferred and therefore may continue to owe balances on their loans to the servicers to whom Nelnet transferred their loans. But this distinction, while perhaps meriting different classes, is not meaningful for purposes of the first-filed rule. The first-filed action, the *Derrico* case, could easily have been framed to include both classes. "What matters," as Defendant notes, is that the theories of both cases overlap—that is, that both turn on "whether there was duplicate reporting and whether Nelnet should have reported the transferred loans with $0 balance," irrespective of "whether the loans were later forgiven or not."

*Walsh*, 2025 U.S. Dist. LEXIS 137297, at *7–8 (citations omitted).

---

[9] The principles behind the rule also apply in the class certification context to alleviate problems that commonly arise with duplicative class litigation. *See, e.g., Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701 (RPK) (RER), 2022 U.S. Dist. LEXIS 127170, at *79 (E.D.N.Y. July 16, 2022) ("In general, parallel and overlapping class actions create problems related to duplicative litigation and fees, risk disparate verdicts, and undermine the goals of judicial economy that the class action device was meant to advance.").

Your Honor rejected the *Walsh* plaintiff's argument that the parties and claims were not sufficiently similar because one had been "carved out" from the other:

> [T]he fact that the Plaintiff has crafted her putative class to not overlap with the putative class in *Derrico*—that is, has "explicitly carved out" the *Derrico* class member from "the class in this case"—does not defeat Defendant's Motion, because "the first-filed rule does not require identical plaintiffs; it only requires that the plaintiffs be substantially similar," *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2011 U.S. Dist. LEXIS 30678, 2011 WL 1143010, at *3 (S.D.N.Y. Mar. 21, 2011); *see also Wyler-Wittenberg*, 899 F. Supp. 2d at 244–46 (applying first-to-file rule on motion to dismiss after recognizing, inter alia, the "vast similarities among the individual plaintiffs in each of the putative collective and class actions" against the same defendant).
>
> Nor does it matter that discovery and damages in the cases may be different. As Defendant notes, the cases "are based on identical theories of liability and alleged misconduct, and . . . have nearly identical complaints." Plaintiff cites no authority for the proposition that, on a motion to dismiss pursuant to the first-to-file rule, a court need compare the trajectory of discovery in the first and subsequently filed cases, or that it should speculate on the type or quantity of damages putative class members may receive at the conclusion of their respective cases. Again, what matters is that the "there are . . . substantially similar parties and claims between the two suits." *Joao*, 2025 U.S. Dist. LEXIS 102469, 2025 WL 1518982, at *1. That requirement is met here.

*Walsh*, 2025 U.S. Dist. LEXIS 137297, at *8 (citations omitted).

Here, as in *Walsh*, the first-filed rule applies and the *Makkawi* plaintiffs' attempt to "carve-out" *Steadman* does alter the rule's applicability in any way. An overlapping consortium of lawyers has filed nearly identical complaints asserting the same causes of action and seeking the same injunctive relief against the same defendants on behalf of similar plaintiffs—pro-Palestine protestors. That is, they allege identical wrongful conduct against the City and individual members of the NYPD; identical violations of state and federal law; identical causes of action based on identical theories of liability; identical forms of relief; and they seek to represent classes of individuals who also attended pro-Palestine protests (during overlapping timeframes) and were allegedly subjected to identical wrongdoing because of identical allegedly unlawful policies.

Additionally, the proof required to prove their claims, including the allegations of City and NYPD unconstitutional policies and practices and inadequate training, will be nearly (if not entirely) identical for both cases. And resolution of the claims in either action would resolve the parties' interests in both actions. Numerous authorities, including Your Honor, have recognized that the first-filed rule applies in such circumstances. *See, e.g.*, *Thomas*, 2015 U.S. Dist. LEXIS 14574, at *9–10 (applying the first-filed rule where "the lawsuits at issue seek identical relief, assert nearly identical claims . . . , and have been filed in a sister New York district court with respect to the same class of plaintiffs as against the same core group of Defendants," and noting that "[c]ourts have found that the first-filed rule is well-suited to such circumstances"). [10]

---

[10] *See also Top Office*, 2025 U.S. Dist. LEXIS 192335, at *13, 16 ("These cases both involve the same factual issues regarding Chase's internal policies and the same legal issues regarding whether Chase's alleged actions in accordance with these policies render Chase liable to plaintiffs"; "[w]hile there are differences between the two cases, the core legal and factual issues that they raise are substantially similar and the differences are less important in that they are symptoms of a common problem."); *Rights To Be v. Bondi*, No. 25-cv-3676 (KAM) (CLP), 2025 U.S. Dist. LEXIS 181427, at *11 (E.D.N.Y. Sep. 16, 2025) ("Although the Right to Be Plaintiffs argue that the plaintiffs in Vera Institute allege a broader challenge to multiple OJP grant programs, whereas the Right to Be Plaintiffs allege a narrower challenge to just the Anti-Hate Crimes Grant Program, this is not determinative because the requested injunctions in both cases depend largely on the same legal theories.") (cleaned up); *United States v. New York*, No. 25-cv-3656 (PKC), 2025 U.S. Dist. LEXIS 149744, at *6 (S.D.N.Y. Aug. 4, 2025) ("Because of the substantial overlap of parties and issues and that the grant of declaratory and injunctive relief in one action may obviate the need for such relief in another action, the Court concludes that the presumption afforded a first filed action applies here."); *McKinney v. Stanley*, No. 24-CV-8860 (VEC), 2025 U.S. Dist. LEXIS 142967, at *17 (S.D.N.Y. July 25, 2025) ("This case and *Burmin* are sufficiently similar to warrant application of the first-filed rule. The claim at the heart of both cases is identical: E*TRADE breached its duties to customers by not paying reasonable interest rates on its BDP accounts. That *Burmin* is more narrowly tailored to address only E*TRADE retirement accounts, and that this case contains more claims than *Burmin*, does not preclude a finding that the cases are substantially similar, given that the cases involve the same defendants and the same sweep program."); *Jeffrey v. DTG Operations, Inc.*, No. 19-CV-7209, 2020 U.S. Dist. LEXIS 56265, at *7–8 (E.D.N.Y. Mar. 31, 2020) (applying the first-filed rule in an overtime compensation case involving rental car employees, notwithstanding the fact that the earlier-filed case only concerned rental car employees stationed at airports); *Wyler-Wittenberg*, 899 F. Supp. 2d at 246 ("[N]otwithstanding that the substance of the compensation claims and the relief sought by the parties differs to a slight degree, the Court finds that the duplicative nature of the totality of claims asserted and the relief sought

**B.      There are No "Special Circumstances" that Warrant Giving Priority to This Action over the *Steadman* Action.**

The first-filed rule does not apply "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau*, 522 F.3d 271, 275 (cleaned up). "'Special circumstances,' which the Second Circuit has noted are 'quite rare,' include manipulative or deceptive behavior by the first-filing plaintiff (e.g., when the first lawsuit is an improper anticipatory declaratory judgment action) and instances in which forum shopping alone motivated the choice of forum for the first suit." *Thomas*, 2015 U.S. Dist. LEXIS 14574, at *8  (cleaned up). *Steadman* is not a declaratory judgment action. Thus, the first-filed rule is not defeated on this ground.

As to forum shopping, we do not suggest that plaintiffs' counsel was motivated by "forum shopping alone" by filing similar actions in two districts. But it is unclear why the same group of lawyers seeks to prosecute a parallel action in this district—with the same claims, allegations of wrongdoing, theories of liability, and relief—even though the vast majority of the subject protests occurred in the Eastern District and they had already filed *Steadman* there. *See Walsh*, 2025 U.S. Dist. LEXIS 137297, at *12–13 (in finding the absence of special circumstances to defeat the first-filed rule, Your Honor noted: "To the extent there is evidence of any forum shopping here, it points to Plaintiff's counsel filing two nearly identical federal cases days apart in adjacent districts for reasons that escape the Court."). Accordingly, the first-filed rule is also not defeated on this ground.

---

warrants application of the 'first-filed' rule in this matter."); *Oleg Cassini*, 2012 U.S. Dist. LEXIS 33875, at *11 (S.D.N.Y. Mar. 13, 2012) (recognizing same interests where "in practice, either lawsuit [would] resolve those parties' interests").

C.    The "Balance of Convenience" Does Not Favor This Action.

"[F]actors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Zainfeld v. Vivid Seats, LLC*, No. 24-1520 (DEH), 2024 U.S. Dist. LEXIS 91179, at *2–3 (S.D.N.Y. May 20, 2024).

> Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Among these factors are: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. Courts also frequently consider: (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Zainfeld*, 2024 U.S. Dist. LEXIS 91179, at *3 (cleaned up). "[T]he proponent of the second-filed suit has the burden of demonstrating that the overall balance of conveniences weighs in favor of its chosen forum in order to establish this exception to the presumption favoring the first-filed action." *Oleg Cassini*, 2012 U.S. Dist. LEXIS 33875, at *24.

> As Your Honor explained in *Zainfeld*:

> [W]here a party is requesting to transfer a case between the Eastern and Southern Districts of New York, most courts ordinarily find, and the Court agrees, that due to the close proximity of the courts in each district, the following factors are relatively neutral with regard to transfer: (1) convenience of the parties; (2) convenience of material witnesses; (3) availability of process to compel the presence of unwilling witnesses; (4) cost of obtaining the presence of witnesses; (5) relative ease of access to sources of proof; (6) calendar congestion; or (7) where the events in issue took place.

*Zainfeld*, 2024 U.S. Dist. LEXIS 91179, at *4 (citing *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 449 (E.D.N.Y. 2011) (collecting cases); *Williams v. City of New York*, No. 03 Civ. 5342, 2006 U.S. Dist. LEXIS 6470, at *7–8 (S.D.N.Y. Feb. 21, 2006) ("Given the proximity of the courts in

-16-

the Southern and Eastern Districts of New York, the aforementioned factors do not pose an obstacle to transferring this action to the Eastern District.")).[11]

The remaining factors are "(1) how much deference to give the Plaintiff[s'] choice of forum and (2) how to weigh the interest of justice." *Zainfeld*, 2024 U.S. Dist. LEXIS 91179, at *5 (cleaned up).

As to the first, "[t]here is less deference given to a plaintiff's choice of forum in cases where, as here, a plaintiff brings an action on behalf of himself and a putative class." *Id.*; *see also McKinney*, 2025 U.S. Dist. LEXIS 142967, at *20 ("The sole factor that tilts clearly in favor of one court is the first, the plaintiffs['] choice of forum, which favors the District of New Jersey because that is where the first-in-time *Burmin* plaintiffs brought suit. Accordingly, the Court finds no reason to deviate from the first-filed rule in this case."); *Andreas-Moses v. Hartford Fire Ins. Co.*, No. 16-CV-1387, 2017 U.S. Dist. LEXIS 180420, at *7 (N.D.N.Y. Oct. 30, 2017) ("Given the nature of this case, as a potential Rule 23 class action, some of the factors that normally inform the balance of convenience calculus under section 1404(a) have less significance. For example, while weight is ordinarily given to a plaintiff's choice of forum, this principle is accorded less emphasis in a class action than in a case brought solely by one or more individuals."); *Wyler-*

---

[11] *See also, e.g., McKinney*, 2025 U.S. Dist. LEXIS 142967, at *19–20 ("Here, almost all of the convenience factors are neutral. E*TRADE is headquartered in New Jersey and Morgan Stanley is headquartered in New York, meaning both forums are likely to have relevant documents and witnesses. More important, Judge Salas's courtroom in Newark and the Undersigned's courtroom in Manhattan are less than 15 miles apart. It defies credulity to suggest that any party or witness would be meaningfully inconvenienced, that any witness or source of proof would be considerably harder to compel or access, or that the locus of operative facts would become too attenuated if this case proceeded on one side of the Hudson River rather than the other.") (cleaned up); *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 549 (E.D.N.Y. 2012) ("[G]iven the relatively short walk across the Brooklyn Bridge separating the two districts, the Court finds—and other courts agree—that the [venue] factors are neutral.") (collecting cases).

*Wittenberg*, 899 F. Supp. 2d at 249 ("Here, because the 'first-filed' rule favors litigation in the forum in which the first suit is brought, the Court finds that [plaintiff]'s choice of forum is not entitled to substantial weight."); *Fandino v. Amalgam Entm't, LLC*, No. 09-CV-8325, 2010 U.S. Dist. LEXIS 14684, at *12 (S.D.N.Y. Feb. 19, 2010) ("The first factor, the plaintiffs['] choice of forum, favors the forum of the first-filed action."). Accordingly, this factor is, at best, neutral.

In *Zainfeld*, Your Honor explained the "interests of justice" factor and the strong preference for avoiding duplicative litigation:

> Having two courts deciding the same issue poses an obvious risk of inconsistent judgments, not to mention a waste of judicial resources. Judicial economy and the interests of consistency strongly favor a single judge deciding both actions because litigating related claims in the same tribunal allows for more efficient pretrial discovery, avoids duplicative litigation, prevents inconsistent results, and saves time and expense for both parties and witnesses."

*Zainfeld*, 2024 U.S. Dist. LEXIS 91179, at *6–7 (S.D.N.Y. May 20, 2024). This reasoning is directly applicable here; there is an obvious risk of inconsistent judgments, and judicial economy would not be served if these cases are permitted to proceed on different tracks in different jurisdictions. For these reasons, the balance of convenience favors applying the first filed-rule to this case.

Finally, given that both matters are in the early stages and share most of the same counsel (and the complaints are already nearly identical), the principles of judicial economy and fairness are best served by dismissal, as numerous courts have noted. *See, e.g.*, *Thomas*, 2015 U.S. Dist. LEXIS 14574, at *13  (granting defendants' motion to dismiss pursuant to the first-filed rule on the grounds that: "[J]udicial economy and fairness to all parties require dismissal of [plaintiff's] collective action claims. There is simply no reason for this Court to decide nearly identical

questions of law and fact as those now being adjudicated in the Eastern District Actions, with

regard to the same requested relief, the same Defendants and the same class of plaintiffs.").[12]

Alternatively, transfer to the first-filed jurisdiction, rather than outright rejection of the

first-filed rule, would be warranted. Given that Judge Reyes denied the City's motion to transfer

*Steadman* to this district, litigation as to the City's handling of pro-Palestine protests is going to

proceed no matter what: as Your Honor observed in *Walsh*, "trial efficiency and the interest of

justice counsel in favor of this case being heard in the same district as [the first-filed action],

---

[12] *See also Jeffrey*, 2020 U.S. Dist. LEXIS 56265, at *7–8 ("The Court finds unavailing Plaintiff's argument that the dismissal of this case 'will essentially lead to the airport Location Managers' New York Labor Law claims not being heard [because] . . . Plaintiff Kemal is seeking to limit his case to non-airport Location Managers.' The Court finds this contention disingenuous, especially since Plaintiffs' counsel is the same in both cases, and does not credit it. Any concerns Plaintiff may have about not being able to pursue his and the class's New York Labor law claims with respect to the airport locations . . . can be easily addressed by the *Kemal* plaintiff amending his complaint to add the claims from this lawsuit.") (cleaned up); *Burke v. Bimbo Bakeries USA, Inc.*, No. 19-cv-902, 2019 U.S. Dist. LEXIS 198263, at *9–10 (N.D.N.Y. Nov. 15, 2019) ("The class/collective claims raised in these two cases are so substantially similar as to require dismissal. . . . It would be patently unfair to require Defendants to litigate the class issues here at the same time as those matters are being litigated in the first-filed action.") (cleaned up); *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 357 (D. Conn. 2019) ("There is little economy in requiring a subset of the New York plaintiffs to seek relief in a separate forum on one set of claims, particularly when the same parties, witnesses, and evidence will all remain relevant to proceedings here."); *Marin*, 2017 U.S. Dist. LEXIS 165568, at *170 ("[T]his Court has already applied the first-filed rule and dismissed two putative class actions that overlap with the claims for which Plaintiffs seek class certification here."); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) ("Dismissal is appropriate not only to promote docket efficiency and interests of comity, but also to avoid burdening a party with litigating the same matter in separate lawsuits.") (citing *Curtis*, 226 F.3d at 138); *see also id.* at 404–05 ("Comparison of this action to the *Whittington* Action reveals that the class/collective claims raised are so substantially similar as to require dismissal of this matter"); *Goldberger v. Bear, Stearns & Co.*, 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714, at *6 (S.D.N.Y. Dec. 28, 2000) ("There is no reason to have two cases involving the manipulation of securities by Sterling Foster going forward in two districts and no basis for this Court to enjoin the proceedings in the Eastern District. Judicial economy would not be served by having the same facts litigated in two federal courts less than five miles apart. Therefore, in the exercise of its discretion, this Court will dismiss the claims asserted against Bear Stearns relating to the securities purchased by the named plaintiffs through Sterling Foster.").

partially because litigation will continue in [the Eastern District of New York] regardless of the decision here." *Walsh*, 2025 U.S. Dist. LEXIS 137297, at *12. Thus, "convenience does not call for this case to be heard in this Court rather than the [Eastern District of New York]." *Id.*

\*       \*       \*

For these reasons, the first filed rule applies; there are no special circumstances counseling against its application; and the balance of convenience favors the Eastern District of New York. Accordingly, this case should be dismissed (or, alternatively, transferred to the Eastern District) pursuant to the first-filed rule.

## CONCLUSION

For the foregoing reasons, the defendants request the Court dismiss the plaintiffs' first amended class action complaint or, alternatively, transfer this action to the Eastern District of New York, and such other relief as the Court deems just.

Dated: New York, New York
        December 1, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
*Attorney for Defendants*

By:    /s/ Sandra A. Bober
       Sandra A. Bober
       *Senior Counsel*

By:    /s/ Joanne M. McLaren
       Joanne M. McLaren
       *Senior Counsel*

CC:    All attorneys of record (via ECF)

-20-

**CERTIFICATION**

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 7,365. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated: New York, New York
      December 1, 2025

                MURIEL GOODE-TRUFANT
                Corporation Counsel of the City of New York
                100 Church Street
                New York, NY 10007
                *Attorney for Defendants*

By:    /s/ Sandra A. Bober
                Sandra A. Bober
                *Senior Counsel*
                Special Federal Litigation Division
                (212) 356-0827
                sabober@law.nyc.gov